

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 09 CV 1056 |
| JOHN M. MARSHALL, STEPHEN Z. ADAMS BROOKSHIRE RAW MATERIALS GROUP, INC., BROOKSHIRE AND COMPANY, LTD. And BROOKSHIRE RAW MATERIALS MANAGEMENT, LLC, | ) ) ) ) ) | Judge Amy St. Eve |
| Defendants. | ) ) | |
| and | ) | |
| BROOKSHIRE RAW MATERIALS GROUP TRUST, | ) ) | |
| Relief Defendant. | ) | |

## CONSENT ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS

### I.      INTRODUCTION

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), has

filed a Complaint against John M. Marshall, Stephen Z. Adams, Brookshire Raw Materials

Management, LLC, Brookshire Raw Materials Group, Inc., and Brookshire and Company, Ltd.

(hereinafter referred to collectively as "Defendants") and Relief Defendant, Brookshire Raw

Materials Group Trust, seeking injunctive and other equitable relief for violations of the

Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the Food,

Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC

1

Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat.1651, and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2008). On February 19, 2009, this Honorable Court entered an *Ex Parte* Statutory Restraining Order against the Defendants that imposed an asset freeze and prohibited the defendants from destroying any documents. On April 13, 2009, this Honorable Court entered a Consent Order for Preliminary Injunction against the Defendants, maintaining with certain modifications the asset freeze against Defendants ordered by the Court on February 19, 2009, and further, prohibiting Defendants from violating the Act and Regulations, as charged in the Complaint.

## II.     CONSENTS AND AGREEMENTS

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

To effect settlement of certain matters alleged in the Complaint against Defendants without a trial on the merits or any further judicial proceedings, Defendants, by and through their attorneys of record:

1.     Consent to the entry of this Consent Order for Permanent Injunction and Other Equitable Relief ("Consent Order").

2.     Affirm that they have, individually and jointly, agreed to this Consent Order voluntarily, and that no threat or promise, other than as specifically contained herein, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order.

3.     Acknowledge service of the summons and Complaint.

4.     Admit the jurisdiction of this Court over Defendants and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006).

5.     Admit that venue properly lies with this Court pursuant to Section 6c of the

Act, 7 U.S.C. § 13a-1 (2006).

6.     Waive:

A.     All claims that Defendants may possess under the Equal Access to
Justice Act (EAJA) ("EAJA"), 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412
(2006), and/or Part 148 of the Regulations, 17 C.F.R. § 148.1, *et seq.* (2009),
relating to, or arising from, this action;

B.     All claims that Defendants may possess under the Small Business
Regulatory Enforcement Fairness Act, Pub. L. 104-121, Subtitle B, Section
223, 110 Stat 862-63 (March 29, 1996), as amended by P.L. 110-28,
May 25, 2007, relating to, or arising from, this action;

C.     All claims that Defendants may possess of Double Jeopardy based upon
the institution of this action, or the entry in this action of any order imposing a
civil monetary penalty and any other relief, or the Consent Order entered
herein; and

D.     All rights of appeal from this Consent Order.

7.     Neither admit nor deny the findings of fact in Section III of this Consent Order.

8.     Agree that neither Defendants nor any of their agents or employees under their

authority or control shall take any action or make any public statement denying, directly or

indirectly, any allegation in the Complaint or findings of fact in this Consent Order, or creating,

or tending to create, the impression that the Complaint or this Consent Order is without a factual

basis; provided, however, that nothing in this provision shall affect Defendants': a)  testimonial

obligations; or b) rights to take legal positions in other proceedings to which the Commission is

not a party.  The Defendants shall take all necessary steps to ensure that all of their agents and/or

employees under their authority or control understand and comply with this agreement.

9.     Agree that no provision of this Consent Order shall in any way limit or

impair the ability of any other person or entity to seek any legal or equitable remedy

against Defendants in any other action or proceeding, including any current or prospective

3

bankruptcy proceeding. Defendants shall also provide immediate notice of any bankruptcy filed by, on behalf of, or against any of them in the manner required by paragraph 34 of Section V of this Consent Order.

10.     Consent to the continued jurisdiction of this Court over Defendants for the purpose of enforcing the terms and conditions of this Consent Order and for all other purposes concerning the issues of necessary statutory and equitable relief, including restitution for pool participants of the commodity pool entitled Brookshire Raw Materials Group Trust ("Relief Defendant") ("the Trust" or "the pool"), disgorgement from the Defendants and Relief Defendant, and the assessment of civil monetary penalties against Defendants, as sought by the Commission in the Complaint.

### III.     FINDINGS OF FACT

11.     From at least September 2006 to December 30, 2008 ("relevant period") defendant Brookshire Raw Materials Management, LLC ("BRM") was a Delaware limited liability company with its principal place of business in Barrington, Illinois. It acted as the commodity pool operator ("CPO") and commodity trading advisor ("CTA") for the Trust. It was registered as a CPO and CTA with the Commission and was a member of the National Futures Association ("NFA"). During the relevant period, BRM was the managing owner of the Trust and responsible for directing its trading activities and preparing monthly and annual reports to the pool participants as required by the Commission and the NFA. Under Regulation 4.7, 17 C.F.R. § 4.7 (2009), BRM was granted an exemption from certain requirements applicable to CPOs under Part 4 of the Regulations because it stated that it offered participation in the Trust only to certain qualified eligible persons who meet required income or net worth requirements.

12. During the relevant period, defendant John M. Marshall ("Marshall") was the Chief Executive Officer ("CEO"), a Manager, and the Chairman of the Board of BRM and was listed as a Principal of BRM in December 2006.

13. During the relevant period, defendant Stephen Z. Adams ("Adams") was the Chief Financial Officer ("CFO") of BRM and was a member of the Board of Managers from October 2006 until April 2007. Adams was listed as a Principal of BRM in November 2006.Adams owns a 10% or more interest, as that term is defined by the NFA's online registration system, in BRM.

14. During the relevant period, defendant Brookshire Raw Materials Group, Inc. ("BRMG") was an Ontario, Canada incorporated company. Marshall was its CEO and a Director while Adams was its CFO and a Director. In November 2005, the NFA listed BRMG as a Principal of BRM.

15. During the relevant period, defendant Brookshire and Company, Ltd. ("BCL") was an Ontario, Canada incorporated company, of which BRMG was a wholly owned subsidiary. Marshall was the President, CEO and Director of BCL. Adams was its CFO. In November 2005, the NFA listed BCL as a Principal of BRM. BCL, BRMG, Adams and Marshall own a 10% or more interest, as that term is defined by the NFA's online registration system, in BRM.

16. During the relevant period, the Trust was a commodity pool governed by a Private Placement Memorandum ("PPM"). The PPM did not authorize the Defendants to use pool participant funds in any way other than for deposit in and/or investment with HSBC Bank and/or Fimat USA, LLC, now known as Newedge USA, LLC. The Trust funded its trading account to begin trading commodity futures on September 6, 2006.

5

17.     From at least January 1, 2006 to December 30, 2008, Defendants solicited and accepted funds from at least 13 pool participants for use in trading in commodity futures in the Trust.

18.     At various times during the operation of the Trust, the Defendants withdrew participant funds from the Trust without authorization.  Defendants withdrew at least $4.6 million (U.S. Dollars) in pool participant funds from the Trust that remained outstanding at the time the Complaint was filed.  These funds were used to pay expenses unrelated to the operation of the Trust, and were also diverted to other accounts that Defendants controlled.  These expenditures and uses were prohibited by the PPM.

19.     In order to conceal their unauthorized withdrawals, Defendants created and sent misleading account statements for the Trust to pool participants throughout the life of the Trust. The vast majority of the statements did not accurately reflect the true value of the Trust.  The account statements also did not disclose the Defendants' unauthorized withdrawals of pool participant funds from the Trust.  The pool participants relied on these misleading statements in maintaining and, in some instances, increasing their investments in the Trust.

20.     During the relevant period, Adams, as CFO of BRM, signed a statement affirming that to the best of his knowledge and belief, the information contained in each Statement of Income (Loss) and Statement of Changes in Net Asset Value, issued for the Trust, for the reporting period noted therein was accurate and complete, when he knew that the information stated therein was neither accurate nor complete.

21.     Beginning on or about December 5, 2008, Defendants Marshall and Adams gave a computer consultant certain servers that contained BRM's CPO records as required under the Act and its Regulations and allowed him to take certain said servers off site for his personal use.

In doing so, and therefore, as of that date, BRM no longer maintained the records that it was required to maintain under Section 4n(3)(A) of the Act and Commission Regulations 1.31 and 4.7(b)(4).

22.     On January 8, 2009, the Commission wrote BRM at its main business office in Barrington, Illinois, requesting among other things, records it is required to keep under Regulations 1.31 and 4.7(b)(4), including all books and records prepared in connection with its activities as the CPO of an exempt pool.

23.     In response to the Commission's request, BRM did not provide the requested books and records to the Commission. During the relevant period, BRM did not maintain its books and records at its main business office in Barrington, Illinois, as required by the Act and its Regulations.

## IV.     ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

24.     Defendants are each permanently restrained, enjoined and prohibited from directly or indirectly:

A.      Cheating or defrauding or attempting to cheat or defraud other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, or contract, that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of, any other person, in violation of Section 4b(a)(1)(A) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A);

B.      Willfully making or cause to be made to the other person any false report or statement or willfully entering into or causing to be entered into for the other person any false record in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, or contract, that is made, or to be made, on or subject to the rules of a designated contract market for or on behalf of, any other person, in violation of Section 4b(a)(1)(B) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(B);

7

C.     Willfully deceiving or attempting to deceive any person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, or contract, that is made, or to be made, on or subject to the rules of a designated contract market for or on behalf of, any other person, in violation of Section 4b(a)(1)(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(C);

D.     In the capacity of a CPO, CTA or associated person of a CPO or CTA, employing any scheme or artifice to defraud other persons, or engaging in any transaction, practices, or a course of business that operates as a fraud or deceit upon any persons, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006); and

E.     In the capacity of a CPO or CTA, failing to maintain books and records and filing such reports in such form and manner as prescribed by the Commission, and failing to maintain said books and records for a period of at least three years, open to inspection by the Commission, in violation of Section 4n(3)(A) of the Act, 7 U.S.C. § 6n(3)(A) (2006), and/or Regulations 1.31 and/or 4.7(b)(4), 17 C.F.R. §§ 1.31 and/or 4.7(b)(4) (2009).

25.     Defendants are each permanently restrained, enjoined and prohibited

from engaging, directly or indirectly, in:

A.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29));

B.     Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1)) ("commodity options"), and/or foreign currency (as described in Section 2(c)(2)(C)(i) of the Act as amended by the by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008) § 13101, 122 Stat. 1651 (enacted June 18, 2008) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

C.     Having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

D.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

E.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

F.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

G.      Acting as a principal (as that term is defined in Regulation 3.1(a)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

**THE PARTIES FUTHER AGREE AND THE COURT FURTHER FINDS THAT:**

26.     The issues of necessary statutory and equitable relief regarding restitution for pool participants, disgorgement from Defendants and Relief Defendant, and civil monetary penalties for the Defendants are still unresolved and are hereby reserved for further proceedings before this Court. In order to facilitate resolution of these issues, the Defendants and their agents, servants, employees, successors, assigns, attorneys and all persons insofar as they are acting in active concert or participation with them who receive actual notice of this Consent Order by personal service or otherwise, including Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4 and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, are restrained, enjoined, and prohibited, until further order of this Court, from directly or indirectly:

A.      Withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of, in any manner, any cash, cashier's checks, funds, assets or other property of, or within the custody, control or actual or constructive possession of Defendants or Relief Defendant, including, but not limited to, all funds, personal property, money or securities held in Defendants' or Relief Defendant's name[s], jointly or individually, whether held or maintained in safety deposit boxes, and including all funds on deposit in any financial or brokerage institution, futures commission merchant, bank or savings and loan account held by, under the actual or constructive control, or in the name of Defendants or Relief Defendant, jointly or individually, funds or property of Defendants' investors, wherever located,

9

whether held in the name of the Defendants, jointly or individually, or any other entity owned or controlled by Defendants. The assets affected by this paragraph shall include only existing assets and shall exclude income and assets acquired after February 19, 2009, so long as such assets are not traceable to the customer funds in Relief Defendant that were improperly removed by Defendants; provided, however, that neither this paragraph nor this Consent Order shall cover or otherwise apply to the Excluded Accounts or the Adams Automobiles identified in paragraph 4 of the Court's April 13, 2009 Order; and

B.      Destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants or Relief Defendant , wherever located, including such records concerning Defendants' or Relief Defendant's business operations, until further order of the Court.

27.     Until further order of this Court, any firm, bank, financial or brokerage institution, futures commission merchant, corporation, partnership, association or other person or entity that holds, controls, or maintains custody of any funds, securities, assets or other property of any kind (other than the Excluded Accounts and the Adams Automobiles as identified in paragraph 4 of the Court's April 13, 2009 Order) and who receives notice of this Consent Order by personal service or otherwise, including Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4 and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, is prohibited from directly or indirectly transferring, withdrawing, removing or disposing of any such assets, funds, securities or other property. Prior to opening any accounts for such property after the date of this Order, Defendants shall provide at least 14 days notice to the CFTC regarding the particulars of such accounts, including the source of funding for those accounts. If the CFTC objects to opening of any such new accounts, the parties agree that the Defendants shall apply to the Court in this matter for permission to open such accounts.

28.     The injunctive provisions of this Consent Order shall be binding upon the Defendants and Relief Defendant, and upon any person who acts in the capacity of agent,

10

employee, attorney, successor and/or assign of any of the Defendants or the Relief Defendant and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, including Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4 and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, insofar as he or she is acting in active concert or participation with any of the Defendants.

## V.    MISCELLANEOUS PROVISIONS

29.    Entire Agreement and Amendments.  This Consent Order incorporates all of the terms and conditions of the settlement as to liability only among the Parties hereto.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all Parties hereto; and (3) approved by order of this Court.

30.    Waiver.  The failure of any Party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such Party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be construed as a further or continuing waiver of a breach of any other provision of this Consent Order.

31.    Collateral Agreements.  Defendants shall immediately notify the Commission if they make any agreement with any pool participant outside of this Consent Order.  Defendants shall also provide immediate evidence to the Court and to the Commission of any such agreement.

32.    Counterparts and Facsimile Execution. This agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the Parties and

delivered (by facsimile or otherwise) to the other Party, it being understood that all Parties need not sign the same counterpart. Any counterpart or other signature to this agreement that is delivered by facsimile shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Agreement.

33.    Notices.  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

    Regional Counsel
    Division of Enforcement - Central Region
    Commodity Futures Trading Commission
    525 West Monroe Street, Suite 1100
    Chicago, Illinois 60661

Notice to Defendants:

    Howard J. Swibel
    Richard K. Hellerman
    Arnstein & Lehr LLP
    120 S. Riverside Plaza
    Chicago, IL 60661

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order.

    **IT IS SO ORDERED** on this 23 day of February 2010.

_____
    **The Honorable Judge Amy J. St. Eve**
    **UNITED STATES DISTRICT JUDGE**
    **NORTHERN DISTRICT OF ILLINOIS**

12

CONSENTED TO AND APPROVED BY:

_____

Howard J. Swibel
Richard K. Hellerman
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
(312) 876-7100

*Attorneys for*
*John M. Marshall*
*Stephen Z. Adams*
*Brookshire Raw Materials*
*Management, LLC,*
*Brookshire Raw Materials Group, Inc.*
*Brookshire and Company, Ltd. and*
*Relief Defendant, Brookshire Raw*
*Materials Group Trust*

_____

John M. Marshall, Individually
and on behalf of Brookshire Raw
Materials Management, LLC,
Brookshire Raw Materials Group, Inc.
Brookshire and Company, Ltd. and
Relief Defendant, Brookshire Raw
Materials Group Trust


_____

Elizabeth Streit
Brigitte Weyls
Commodity Futures Trading Commission
525 W. Monroe, #1100
Chicago, IL 60661
(312) 596-0700


*Attorneys for*
*Commodity Futures Trading*
*Commission*

_____

Stephen Adams, Individually
and on behalf of Brookshire Raw
Materials Management, LLC,
Brookshire Raw Materials Group, Inc.
Brookshire and Company, Ltd. and
Relief Defendant, Brookshire Raw
Materials Group Trust

14

**CONSENTED TO AND APPROVED BY:**

Howard J. Swibel
Richard K. Hellerman
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
(312) 876-7100

*Attorneys for*
*John M. Marshall*
*Stephen Z. Adams*
*Brookshire Raw Materials*
*Management, LLC,*
*Brookshire Raw Materials Group, Inc.*
*Brookshire and Company, Ltd. and*
*Relief Defendant, Brookshire Raw*
*Materials Group Trust*

_____
John M. Marshall, Individually
and on behalf of Brookshire Raw
Materials Management, LLC,
Brookshire Raw Materials Group, Inc.
Brookshire and Company, Ltd. and
Relief Defendant, Brookshire Raw
Materials Group Trust

Elizabeth Streit
Brigitte Weyls
Commodity Futures Trading Commission
525 W. Monroe, #1100
Chicago, IL 60661
(312) 596-0700

*Attorneys for*
*Commodity Futures Trading*
*Commission*

_____
Stephen Adams, Individually
and on behalf of Brookshire Raw
Materials Management, LLC,
Brookshire Raw Materials Group, Inc.
Brookshire and Company, Ltd. and
Relief Defendant, Brookshire Raw
Materials Group Trust

14

**CONSENTED TO AND APPROVED BY:**

Howard J. Swibel
Richard K. Hellerman
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
(312) 876-7100

*Attorneys for*
*John M. Marshall*
*Stephen Z. Adams*
*Brookshire Raw Materials*
*Management, LLC,*
*Brookshire Raw Materials Group, Inc.*
*Brookshire and Company, Ltd. and*
*Relief Defendant, Brookshire Raw*
*Materials Group Trust*

John M. Marshall, Individually
and on behalf of Brookshire Raw
Materials Management, LLC,
Brookshire Raw Materials Group, Inc.
Brookshire and Company, Ltd. and
Relief Defendant, Brookshire Raw
Materials Group Trust

Elizabeth Streit
Brigitte Weyls
Commodity Futures Trading Commission
525 W. Monroe, #1100
Chicago, IL 60661
(312) 596-0700

*Attorneys for*
*Commodity Futures Trading*
*Commission*

Stephen Adams, Individually
and on behalf of Brookshire Raw
Materials Management, LLC,
Brookshire Raw Materials Group, Inc.
Brookshire and Company, Ltd. and
Relief Defendant, Brookshire Raw
Materials Group Trust

14